# UNITED STATES DISTRICT COURT

for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Target Accounts, hosted at premises controlled by Google LLC, more fully described in Attachment A.

)
)
)
)
)
)

Case No.    MJ22-599

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Target Accounts, hosted at premises controlled by Google LLC, more fully described in Attachment A.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

❑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

❑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C. § 844(i) | Arson |

The application is based on these facts:

✓ See Affidavit of Special Agent Natalia Vorotnikova, continued on the attached sheet.

❑ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

---

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ❑ telephonically recorded.

NATALIA VOROTNIKOVA
Digitally signed by NATALIA VOROTNIKOVA
Date: 2022.12.22 12:12:18 -08'00'

*Applicant's signature*

Natalia Vorotnikova, Special Agent (ATF)

*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____12/23/2022_____

*Judge's signature*

City and state: _____Seattle, Washington_____          S. Kate Vaughan, United States Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

STATE OF WASHINGTON      )

                      )    ss

COUNTY OF KING           )

I, Natalia Vorotnikova, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, in Seattle, Washington, having been duly sworn, state as follows:

## AFFIANT BACKGROUND AND INTRODUCTION

1.     I am a Special Agent with the United States Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been so employed since March 8, 2018. I am currently assigned to the Seattle Field Division in Seattle, Washington, where I am assigned to the Seattle III Field Office. The Seattle III Field Office is mainly responsible for investigating arson- and explosives-related incidents. I also enforce federal criminal laws relating to the unlawful possession, use, and trafficking of firearms, and investigate individuals who illegally use firearms to commit violent crimes. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United states Code, Section 2516.

2.     I received formal training at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. I successfully completed the Criminal Investigators Training Program (CITP), which familiarized me with basic narcotic investigations, drug identification, drug detection, familiarization with United States narcotics laws, financial investigations, money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance and undercover operations. In addition, I successfully completed a fourteen-week, ATF Special Agent

AFFIDAVIT OF SA VOROTNIKOVA - 1
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Basic Training (SABT) course in Glynco, Georgia. SABT included comprehensive, formalized instruction in, amongst other things: firearms identification, firearms trafficking, arson investigations, explosives identification and investigation along with alcohol and tobacco diversion. I have a Bachelor of Science Degree in Criminal Justice from Winona State University in Winona, Minnesota.

3.     As noted above, I am responsible for investigations involving specified unlawful activities, to include violent crimes involving firearms and arsons that occur in the Western District of Washington. I am also responsible for enforcing federal firearms and explosives laws and related statutes in the Western District of Washington. I received training on the proper investigative techniques for these violations, including the identification of firearms and the location of the firearms' manufacture. I have actively participated in investigations of criminal activity, including but not limited to crimes against persons, crimes against property, narcotics-related crimes, and crimes involving the possession and use, theft, or transfer of firearms, and arson investigations. During these investigations, I have also participated in the execution of search warrants and the seizure of evidence indicating the commission of criminal violations.

4.     I make this affidavit in support of an application for a search warrant for data and information associated with an account ("Target Account") stored at premises controlled by an electronic communications service and/or remote computer service provider ("Provider"), referenced below.  The information to be searched is described in the following paragraphs and in Attachment A, which is incorporated herein.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require:

a.     Google LLC ("Google" or "Provider"), located at 1600 Amphitheatre Parkway, Mountain View, California, to disclose to the government copies of the information related to the accounts associated with the cellular telephone bearing International Mobile Equipment Identity (IMEI) number 354030116084186 and/or telephone number (360) 544-2519, hereafter (Target Account).  The account is further

AFFIDAVIT OF SA VOROTNIKOVA - 2
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

described in the following paragraphs and in Attachment A. The information to be disclosed by Google is described in Section I of Attachment B while the information to be sized by the government is described in Section II of Attachment B.  This warrant is requested in connection with an ongoing investigation in this district by the Seattle Field Office of the ATF.

5.      On about May 18, 2022, a Grand Jury in the Western District of Washington issued an Indictment charging DWIGHT C. HENLINE with Arson in violation of Title 18, United States Code, Section 844(i). Applications for search warrants for Google account dwighthenline44@gmail.com under MJ22-267, Facebook account www.facebook.com/dwight/henline.1 under MJ22-554, a pink Apple cellular telephone Model A661 under MJ22-405, a black Samsung Galaxy Model A51 cellular telephone with  IMEI 354030116084186 under MJ22-203 and MJ22-426, and for Verizon records associated with phone number (360) 544-2519 under MJ22-245 were previously filed with this Court.  Those applications sought authority, among other things, to compel providers to disclose or to search the physical device for historical location information and other records related to the Samsung Galaxy cellular telephone with IMEI 354030116084186. The instant application seeks location history data and other information for any additional Google accounts linked to IMEI 354030116084186 or phone number 360-544-2519 that were not included in the prior search warrant served on Google, MJ22-267, that specifically requested records associated with Google account dwighthenline44@gmail.com.

6.      The facts set forth in this Affidavit are based on my personal knowledge; information obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing

AFFIDAVIT OF SA VOROTNIKOVA - 3
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

probable cause in support of a criminal complaint, it does not set forth every fact that I and others have learned during this investigation.

7.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 844(i) (Arson), ("Target Offense"), has been committed by DWIGHT C. HENLINE.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, and fruits of these crimes further described in Attachment B.

## SUMMARY OF PROBABLE CAUSE

### *The Fire*

8.      On Thursday, April 7, 2022, at approximately 3:43 a.m., the San Juan County Sheriff's Office (SJCSO) dispatch received a call from a citizen who reported he observed flames emanating from the rear of the Crystal Seas Kayaking building located at 40 Spring Street, Friday Harbor, Washington. San Juan County Fire Department units arrived to fight the fire, including elements from Orcas and Lopez Island Fire Departments. Fire units continued to fight the fire until approximately mid-day, April 7, 2022. The fire spread to the adjacent buildings located southwest of Crystal Seas Kayaking, which housed the businesses Windermere Real Estate, Crow's Nest Coffee, and Herb's Tavern, resulting in severe damage to or total destruction of those businesses. Cost estimates are ongoing, but are projected to be in the millions of dollars. San Juan County requested assistance from ATF to investigate the cause and origin of the fire.

9.      From April 9, 2022, through April 13, 2022, subject matter experts from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) National Response Team (NRT) processed the scene to determine the origin and cause of the fire. The team included certified fire investigators, certified explosive specialists, electrical engineers, fire protection engineers, and other specialists. The scientific method was followed during the course of the scene investigation. As investigators collected and analyzed data, numerous hypotheses were developed and considered. Investigators considered all

AFFIDAVIT OF SA VOROTNIKOVA - 4
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  reasonable causes/ignition hypotheses that were supported by evidence, including

2  accidental, natural, and willful action. Personnel interviewed witnesses, assessed fire

3  patterns, and analyzed fire dynamics relevant to the scene.

4      10.     Investigators located and recovered video from a Nest Security System in

5  the Windermere Real Estate Office. Windermere is housed at 50 Spring Street,

6  immediately adjacent to Crystal Seas Kayaking. One of the cameras inside Windermere

7  was set in a rear conference room, pointing towards the back of the building. The

8  windows in that conference room were adjacent to and looked out at the rear wooden

9  deck area of the Crystal Seas Kayaking building. However, on the evening of April 6,

10  2020, the shades to those windows were closed.

11     11.     Although the shades were closed, the video captured a bright flash of light

12  at approximately 10:04 p.m. on April 6, 2022 (*Figure 1*). The flash of light lasted for

13  approximately 34 seconds and then began to flicker and diminish in brightness. The audio

14  also captured a crackling sound.



*Figure 1*

AFFIDAVIT OF SA VOROTNIKOVA - 5
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

12.     At approximately 3:15 a.m. on April 7, 2022, the Windermere Real Estate Office's Nest Security System began capturing a glow through the windows and the glass door of the conference room. The glow continued to intensify.

13.     At approximately 03:38 a.m., a glow consistent with fire and what appeared to be white smoke were observed outside the windows and the glass door (*Figure 2*). The camera subsequently went offline.



*Figure 2*

14.     Investigators excavated and sifted the rear portion of the building and deck area behind Crystal Seas Kayaking. Investigators examined the electrical system and components within the same area and eliminated them as a potential cause of the fire. Investigators considered potential accidental fire causes and tested them against the available data, subsequently eliminating them as a cause of the fire.

15.     Based upon witness statements, fire patterns, and fire dynamics, including an analysis of CCTV video, it is the combined opinion of the subject matter experts from the ATF National Response Team that the fire originated on the lower rear wooden deck behind Crystal Seas Kayaking. The cause of the fire was an ignitable liquid being

AFFIDAVIT OF SA VOROTNIKOVA - 6
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   introduced into the fire scene and ignited. After an ignitable liquid is ignited, the fire

2   grows rapidly in intensity, producing bright light. As the ignitable liquid is consumed, the

3   fire and the light it produces diminish. When there are other fuels—like a wooden deck—

4   the fire may smolder for some time before again increasing in intensity as these other

5   fuels are consumed. ATF experts have observed similar fire dynamics in laboratory

6   settings where ignitable liquids were used.

7       16.     Due to analysis of the previously stated data, ATF has classified the fire as

8   incendiary. In this context, incendiary means that the fire did not have an accidental or

9   natural cause. Instead, it was intentionally started.

10                  *Identification of DWIGHT C. HENLINE as Being in the Vicinity of the*

11                                          *Fire When It Began*

12      17.     During their investigation, ATF Special Agents and SJCSO personnel

13  collected video from several businesses and government agencies in the vicinity of 40

14  Spring Street. Analysis of selected video feeds show the following:

15          a.      Investigators located and reviewed surveillance footage from the

16  camera located on the Port of Friday Harbor dock. The camera was facing approximately

17  southwest toward the intersection of Front Street and Spring Street. On April 6, 2022, at

18  approximately 10:05 p.m., investigators observed a subject walking quickly from the area

19  near the Cask and Schooner toward the ferry landing. The Cask and Schooner is a

20  restaurant adjacent to the Crystal Seas Kayaking building (on the other side from

21  Windermere) and the scene of the fire.

22          This video was not of a quality that allowed investigators to specifically

23  identify the subject, because of the distance from the intersection and the dark conditions,

24  but it did allow for continuous tracking of the subject's movements. After coming into

25  view at 10:05 p.m., the subject appeared to walk down the stairs towards the lower deck

26  area of Friday Harbor Ice Cream Co. at approximately 10:06 p.m. Friday Harbor Ice

27  Cream Co. is located at 1 Front Street South in Friday Harbor, northeast of the fire scene.

28

AFFIDAVIT OF SA VOROTNIKOVA - 7
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  There are no open businesses in this lower deck area; rather, it is under the ice cream
2  shop along the harbor.

3     After a short period, the subject then walked back upstairs and around the
4  front of the ice cream business toward the ferry landing, this time pulling a rolling
5  suitcase. (Note: Footage from the same surveillance camera earlier that same evening
6  showed a subject consistent with the subject mentioned above bringing a rolling suitcase
7  down the stairs to the Friday Harbor Ice Cream Co.'s lower deck area at approximately
8  7:50 p.m., then walking up the stairs without the suitcase at approximately 8:10 p.m. The
9  same subject appeared to re-enter the deck area on multiple occasions between 8:24 p.m.
10  and 9:37 p.m., always leaving the suitcase behind.)

11     b. Investigators did not locate any video that showed individuals other
12  than this subject in the general vicinity of the Crystal Seas Kayaking building at the time
13  the fire began, at approximately 10:04 p.m., although investigators did not locate any
14  video that showed the building at 40 Spring Street itself.

15     c. Investigators obtained photos from surveillance video from the
16  Washington State Patrol. One of the photos depicted the passenger area of the Friday
17  Harbor Ferry Terminal. On April 6, 2022, at approximately 10:12 p.m., a subject
18  consistent with the subject that retrieved a suitcase walked towards the ferry's walk-on
19  passenger loading area (***Figure 3***). The subject appeared to be coming from the direction
20  of the Friday Harbor Ice Cream Co., and the time required to walk that short distance is
21  consistent with the subject being the person who retrieved the suitcase. There were few
22  passengers in the passenger ferry terminal that evening, and the subject was the only one
23  pulling a rolling suitcase. The subject ultimately the boarded the Washington State Ferry
24  bound for Anacortes, Washington, at 10:24 p.m. The ferry departed at 10:38 p.m. for the
25  approximately 65-minute ride to Anacortes.

26  //
27  //
28

AFFIDAVIT OF SA VOROTNIKOVA - 8
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



*Figure 3*

d.       Washington State Patrol provided a photo depicting the subject walking through the passenger area of the ferry at 11:52 p.m.  (*Figure 4*). The photo was of a quality that allowed for recognition of articles of clothing and the subject's general features, but a clear shot of his face was not available. The subject appeared to be a white male with medium length dark hair. The subject was wearing a camouflage baseball cap, an olive drab T-shirt, possible camouflage pants, military-style boots, dark-colored gloves, and a dark watch on his left wrist. A large fixed-blade knife was observed in a holster on his left hip.

//

//

AFFIDAVIT OF SA VOROTNIKOVA - 9
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970



*Figure 4*

      e.     At approximately 11:57 p.m., the subject disembarked the ferry upon its arrival in Anacortes. At approximately 12:04 a.m. on April 7, 2022, the subject entered a dark-colored sedan and departed the ferry lot (*Figure 5*).

//

//

AFFIDAVIT OF SA VOROTNIKOVA - 10
USAO# 2022R00471

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



*Figure 5*

24   18.    This subject on the ferry was ultimately identified as DWIGHT C.
25  HENLINE as discussed below. DWIGHT C. HENLINE was known to San Juan County
26  law enforcement personnel, and his actions had generated several calls for service in
27  Friday Harbor on April 6, 2022, such that sheriff's deputies and others interacted with
28  him that day before he departed Friday Harbor on the ferry.

AFFIDAVIT OF SA VOROTNIKOVA - 11
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a.      SJCSO Case # 22-2060: At approximately 3:15 p.m. on April 6, 2022, SJCSO deputies responded to a burglary in progress at Saint Francis Catholic Church, located at 425 Price Street in Friday Harbor, Washington. This church is about a half mile, 10- to 15-minute walk from the scene of the fire at 40 Spring Street. The complainant, DWIGHT C. HENLINE's former roommate E.K., told deputies he observed a subject that looked like DWIGHT C. HENLINE entering the structure. Deputies did not locate any subjects on the church's premises.

b.      SJCSO Case # 22-2066: At 5:44 p.m. on April 6, 2022, complainant J.B. identified DWIGHT C. HENLINE by name and stated DWIGHT C. HENLINE had harassed him and his girlfriend, A.C., by making veiled threats that he was going to "come after" the complainant when he least suspected it. A.C. had formerly dated DWIGHT C. HENLINE, and DWIGHT C. HENLINE was alleged to have followed her to Friday Harbor after they broke up. The complainant was advised to obtain an anti-harassment order.

c.      SJCSO Case # 22-2068: At 6:23 p.m. on April 6, 2022, a complainant asked law enforcement to trespass DWIGHT C. HENLINE, whom she identified by name, from the Presbyterian Church properties located at 395 Spring Street in Friday Harbor, Washington. The Presbyterian church is only three or four blocks and a five-minute walk from the scene of the fire at 40 Spring Street. The complainant asked that DWIGHT C. HENLINE be trespassed because of his "hostile and creepy" behavior at an Alcoholics Anonymous meeting that morning at the church. SJCSO Deputy Jay Holt located DWIGHT C. HENLINE at his van, a 1999 Mercury Villager bearing Washington license plate BLG0649. The vehicle was parked at Washington State Ferries Lot C, which is approximately three blocks from the location of the fire. Deputy Holt served DWIGHT C. HENLINE with the trespass notice at approximately 7:15 p.m. DWIGHT C. HENLINE told Deputy Holt that he was intending to leave the island the following day to return to Oak Harbor. DWIGHT C. HENLINE further told Deputy Holt

AFFIDAVIT OF SA VOROTNIKOVA - 12
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  that he had a suitcase at the church that he needed to retrieve. A bystander who had towed

2  DWIGHT C. HENLINE's vehicle to the lot advised he would retrieve the suitcase.

3      19.     In addition to the cases listed above, the SJCSO has a number of historical

4  records involving DWIGHT C. HENLINE.

5           a.     Deputy Holt arrested DWIGHT C. HENLINE after a collision on

6  July 8, 2021, because he was driving under the influence of alcohol or intoxicants.

7  Deputy Holt found that DWIGHT C. HENLINE was in possession of a firearm, which he

8  was ineligible to possess due to a previous domestic violence conviction (21-5890).

9           b.     On February 5, 2022, Deputy Holt again had contact with DWIGHT

10  C. HENLINE, this time regarding arguments he was having with his roommate, E.K. (22-

11  000822). Through that investigation, Deputy Holt learned DWIGHT C. HENLINE was

12  living with E.K. at E.K.'s residence in Friday Harbor, Washington, and that DWIGHT C.

13  HENLINE was using his van to store personal items.

14           c.     On February 22, 2022, DWIGHT C. HENLINE made a report to law

15  enforcement claiming that E.K. had committed the offense of unlawful weapons

16  possession. E.K. was subsequently arrested for unlawful possession of firearms, and

17  DWIGHT C. HENLINE moved out of E.K.'s residence. While reporting the unlawful

18  possession of firearms by E.K., DWIGHT C. HENLINE provided law enforcement with

19  his own phone number: (360) 544-2519. (Note: During the arson investigation, the

20  investigators researched phone number (360) 544-2519 and found information linking it

21  to Julie (J.) Harrop. During further research, J. Harrop was identified as DWIGHT C.

22  HENLINE's mother.)

23      20.     On April 11, 2022, ATF SA Ellen Michelin, a member of the National

24  Response Team on site to help with the investigation, interviewed Deputy Holt regarding

25  his contacts with DWIGHT C. HENLINE. Deputy Holt described the clothing worn by

26  DWIGHT C. HENLINE during the law enforcement contact on April 6, 2022, and it was

27  consistent with the photo of a subject walking though the ferry passenger area provided

28  by Washington State Patrol. ATF investigators showed Deputy Holt a still photo of the

AFFIDAVIT OF SA VOROTNIKOVA - 13
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   subject walking through the passenger area of the ferry on April 6, 2022, and he

2   positively identified DWIGHT C. HENLINE as that subject. This is the same subject

3   who walked from the area of the Cask and Schooner at 10:05 p.m., went to obtain the

4   suitcase at 10:06 p.m. at Friday Harbor Ice Cream Co., entered the ferry's passenger

5   waiting area at 10:12 p.m., and boarded the ferry at 10:24 p.m., all on April 6, 2022.

6       21.     SJCSO Detective Lukas Peter, who was working on the investigation with

7   ATF agents, separately showed the same still photo to his colleague SJCSO Deputy

8   Nawn. Deputy Nawn, who has also had prior law enforcement contact with DWIGHT C.

9   HENLINE, also positively identified DWIGHT C. HENLINE as the subject on the ferry

10  based on his prior interactions with him. Deputies Nawn and Holt were both able to

11  identify DWIGHT C. HENLINE based on his unique physical features.

12      22.     On April 11, 2022, Det. Peter interviewed A.C., DWIGHT C. HENLINE's

13  former girlfriend. A.C. said she dated DWIGHT C. HENLINE for approximately two

14  years, ending the relationship in January 2021. A.C. said she lived with DWIGHT C.

15  HENLINE on Whidbey Island, then moved back to San Juan Island after their breakup.

16  A.C. said DWIGHT C. HENLINE also moved up to San Juan Island and had been

17  behaving strangely since. A.C. reported that DWIGHT C. HENLINE's demeanor was

18  erratic; sometimes he asked to hang out with her and sometimes he threatened to kill her

19  through unspecified means. A.C. said that on or about April 6, 2022, DWIGHT C.

20  HENLINE appeared to be intoxicated in a vacant lot near Spring Street and was yelling

21  veiled threats about "getting" her and her new boyfriend. A.C. said she heard that

22  HENLINE had left the island.

23      ***DWIGHT C. HENLINE's Activities on April 6, 2022***

24      23.     ATF agents reviewed high quality surveillance footage collected from

25  King's Market, a grocery store located at 160 Spring Street in Friday Harbor, across the

26  street from Herb's Tavern, which is one of the buildings destroyed in the fire. The video

27  depicted a subject—who was clothed similarly to the subject identified as DWIGHT C.

28  HENLINE—purchasing three items, which were later determined to be two Monster

AFFIDAVIT OF SA VOROTNIKOVA - 14
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

energy drinks and one bag of M&Ms, and paying with a card at 5:04 p.m. (Note: The receipt for 5:04 p.m. purchase was subsequently located in DWIGHT C. HENLINE's vehicle during the execution of a search warrant, discussed below.) The subject set the purchased items, which were contained in a blue plastic bag, on the floor near the main entry door and walked out of view from the camera. The subject then returned to the register and purchased gallon jugs of bleach and ammonia with a card at approximately 5:11 p.m. on April 6, 2022 (*Figure 6*). SJCSO Deputy Brandt, who has had prior law enforcement contact with DWIGHT C. HENLINE, reported that she was off duty at approximately that time and observed DWIGHT C. HENLINE in the cleaning product aisle.



*Figure 6*

24.     ATF agents also reviewed surveillance footage from the nearby Little Store, located at 285 Spring Street, Friday Harbor, Washington, about two blocks from the scene of the fire on the same street. The footage showed a subject purchasing an 8-ounce yellow bottle of Ronsonol lighter fuel at 9:53 p.m. (i.e., eleven minutes before the fire began) on April 6, 2022 (*Figures 7 and 8*). The subject paid $5.00 in cash for the bottle. The subject appeared to be wearing the same clothes as the subject identified as

AFFIDAVIT OF SA VOROTNIKOVA - 15
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

DWIGHT C. HENLINE from the later ferry footage. Additionally, the subject is wearing a fixed-blade knife in a holster on his left hip and a distinctive tooth-shaped necklace; an unusual club-like object also appeared to be attached to the subject's backpack (***Figure 9***). Agents compared this footage from the Little Store with DWIGHT C. HENLINE's publicly accessible Facebook page. The distinctive tooth-shaped necklace and the club-like object are visible in both (***Figures 10 and 11***).



*Figure 7*

//

//



*Figure 8*



*Figure 9*

AFFIDAVIT OF SA VOROTNIKOVA - 17
USAO# 2022R00471

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970



*Figure 10*



*Figure 11*

AFFIDAVIT OF SA VOROTNIKOVA - 18
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25.     ATF agents reviewed surveillance footage from cameras placed in public areas by the Town of Friday Harbor. That footage showed DWIGHT C. HENLINE at 9:55 p.m. (i.e., two minutes after purchasing lighter fuel and nine minutes before the fire began) walking along Sunshine Alley, away from the Little Store, then walking through the alley between the Palace Theatre and the Bait Shop, both of which are located on Spring Street, approximately 450 feet southwest of the fire scene. At approximately 9:56 p.m. (three minutes after buying the lighter fuel and eight minutes before the fire began), DWIGHT C. HENLINE crossed Spring Street, passed King's Market, and continued walking in the direction of Crystal Seas Kayaking (*Figure 12*).



*Figure 12*

26.     To recap the timeline of DWIGHT C. HENLINE's movements on April 6, 2022:

AFFIDAVIT OF SA VOROTNIKOVA - 19
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- 5:04 p.m.: DWIGHT C. HENLINE purchased candy and energy drinks at King's Market.

- 5:11 p.m.: DWIGHT C. HENLINE purchased bleach and ammonia at King's Market.

- 7:15 p.m. (approximately): Deputy Holt served DWIGHT C. HENLINE with the trespass notice at Washington State Ferries Lot C.

- 7:50 p.m.: DWIGHT C. HENLINE walked to Friday Harbor Ice Cream Co. and went to the lower deck; he appeared to be carrying a backpack and rolling a suitcase.

- 8:10 p.m.: DWIGHT C. HENLINE walked up the stairs from the deck area without the suitcase and traveled southwest towards Cask and Schooner Public House. DWIGHT C. HENLINE appeared to be carrying a backpack.

- 8:24 p.m. to 9:37 p.m.: DWIGHT C. HENLINE made several trips to and from the Friday Harbor Ice Cream Co. lower deck.

- 9:53 p.m.: DWIGHT C. HENLINE purchased Ronsonol lighter fuel from the Little Store.

- 9:55 p.m.: DWIGHT C. HENLINE walked along Sunshine Alley, away from the Little Store, and through the alley between the Palace Theatre and the Bait Shop to Spring Street.

- 9:56 p.m.: DWIGHT C. HENLINE crossed Spring Street, passed King's Market, and continued to travel towards the area of Crystal Seas Kayaking.

- 10:04 p.m.: Windermere Real Estate surveillance footage captured a bright 30-second flash in the area of Crystal Seas Kayaking, marking the ignition of the ignitable liquid and the beginning of the fire.

- 10:05 p.m.: DWIGHT C. HENLINE walked from the corner of Cask and Schooner to the Friday Harbor Ice Cream Co. lower deck.

AFFIDAVIT OF SA VOROTNIKOVA - 20
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- 10:06 p.m.: DWIGHT C. HENLINE obtained the suitcase from the lower deck area of Friday Harbor Ice Cream Co.
- 10:12 p.m.: DWIGHT C. HENLINE walked towards the ferry's walk-on passenger loading area.
- 10:24 p.m.: DWIGHT C. HENLINE boarded the ferry bound to Anacortes.
- 11:57 p.m.: DWIGHT C. HENLINE disembarked the ferry in Anacortes.
- 12:04 a.m.: DWIGHT C. HENLINE entered a dark-colored sedan and departed the ferry lot.

27.     Through reviewing multiple surveillance videos, investigators did not observe much foot traffic in the area of Spring Street near Crystal Springs Kayaking on April 6, 2022, especially after 9:00 p.m.

### *Vehicle Search Warrant*

28.     On April 11, 2022, after identifying DWIGHT C. HENLINE as the probable suspect, ATF SA Michelin looked for the light-green, 1999 Mercury Villager minivan with Washington license plate BLG0649, the same vehicle in which Deputy Holt contacted DWIGHT C. HENLINE on April 6, 2022. Agent Michelin found it at approximately 8:50 a.m. parked in the Friday Harbor Washington State Ferries Commuter Parking Lot C, in the area of Nichols Street East and B Street, where Deputy Holt had contacted DWIGHT C. HENLINE. Subsequent checks of Washington Department of Licensing (DOL) records showed the vehicle was registered to Dwight C. Henline.

29.     At approximately 9:12 a.m., two of the investigators assigned to this case, ATF SA Heller and SJCSO Detective Peter, went to Lot C and observed the same minivan. Agent Heller and Detective Peter looked through the vehicle's windows but did not open any doors or windows. They observed that the vehicle was packed very full of miscellaneous belongings. A black pistol holster was visible on the driver's seat near the center armrest. Due to DWIGHT C. HENLINE's conviction for Assault 4 Domestic Violence, he was not eligible to possess firearms under state law. They also saw a plastic

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  jug partially full of liquid on the driver's floorboard. No markings were visible on the

2  container. They saw a BIC brand lighter in an open compartment on the driver's door

3  near the window controls. SA Heller took photographs of the vehicle and the items of

4  interest. The vehicle was subsequently impounded and secured at the SJCSO lot; it was

5  not operable.

6        30.     On the same day, at approximately 10:00 p.m., agents executed a search

7  warrant obtained from the San Juan County Superior Court on DWIGHT C. HENLINE's

8  1999 Mercury Villager minivan. Among other items, investigators recovered a King's

9  Market receipt dated April 6, 2022, at 17:05:38, documenting a purchase of two energy

10  drinks and M&Ms; multiple lighters; charcoal lighter fluid; an aluminum bat with screws

11  attached; and gasoline samples from a gas can. (Note: The charcoal lighter fluid and the

12  gas can were both located in the back seat under belongings and were not immediately

13  accessible.)

14        *__Phone Contact with DWIGHT C. HENLINE__*

15        31.     On April 13, 2022, Agent Heller and Detective Peter contacted DWIGHT

16  C. HENLINE's mother J. Harrop in unincorporated Island County. She confirmed (360)

17  544-2519 was the current cell phone number for DWIGHT C. HENLINE, and that she

18  was his mother. She further stated DWIGHT C. HENLINE was not at her home, but was

19  elsewhere on Whidbey Island. J. Harrop said DWIGHT C. HENLINE had called her

20  around 7:00 p.m. on Wednesday (April 6, 2022), and she picked him up from the ferry in

21  Anacortes. J. Harrop said DWIGHT C. HENLINE was "done" with being in Friday

22  Harbor and was upset with his former roommate "E." J. Harrop stated that DWIGHT C.

23  HENLINE stayed at her house located in Oak Harbor, Washington, from the time she

24  picked him up from the ferry in the early morning hours of April 7, 2022, until April 12,

25  2022, when she stated she drove DWIGHT C. HENLINE to her parents' (DWIGHT C.

26  HENLINE's grandparents') residence in Langley, Washington. A search of Washington

27  State Driver's records showed DWIGHT C. HENLINE has a listed address in Langley,

28  Washington. A search of Island County Assessor's records showed that that property was

AFFIDAVIT OF SA VOROTNIKOVA - 22
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 owned by William (W.) Harrop. A public records search showed W. Harrop was 80 years

2 old and a relative of J. Harrop and DWIGHT C. HENLINE. Information obtained from

3 Island County Sheriff's Office (ICSO) indicated that J. Harrop was also associated with

4 that address.

5   32.   Later, on April 13, 2022, Agent Heller and Detective Peter called DWIGHT

6 C. HENLINE on the number they obtained from SCJSO records that his mother had

7 confirmed. They advised DWIGHT C. HENLINE that their conversation was being

8 recorded. DWIGHT C. HENLINE stated that he had left Friday Harbor and was "done

9 with that place." DWIGHT C. HENLINE confirmed that he had had contact with a

10 SJCSO deputy who had served him with a trespass notice.

11   33.   DWIGHT C. HENLINE claimed that after his contact with the deputy, he

12 had played an augmented reality type game on his phone, of a type similar to the popular

13 game Pokémon Go. He said this game involved moving around and finding things.

14 DWIGHT C. HENLINE said he was in the area of the high school and a bench near Key

15 Bank and when playing the game. DWIGHT C. HENLINE said the only business he

16 entered was the Little Store. He said at the Little Store he purchased non-alcoholic drinks.

17 DWIGHT C. HENLINE denied purchasing any lighters or lighter fluid and also said he

18 did not see anyone else purchasing lighters or lighter fluid that day. DWIGHT C.

19 HENLINE said he then picked up a chicken wrap from Haley's. Haley's Sports Bar &

20 Grill is located at 175 Spring Street, Friday Harbor, Washington, and is across the street

21 and a block away the scene of the fire. DWIGHT C. HENLINE said he decided not to eat

22 in the restaurant because they appeared to be about to close. (Note: surveillance footage

23 showed DWIGHT C. HENLINE departing Haley's at approximately 9:09 p.m.)

24 DWIGHT C. HENLINE said he then walked down towards the ferry terminal. He said he

25 walked on the Haley's and Chinese pizza restaurant side of the street. (This would be the

26 southeast side of Spring Street, across the street from the scene of the fire. Although

27 earlier video showed DWIGHT C. HENLINE walking down this side of the street, the

28 video from immediately before the fire was ignited and after the fire was ignited when he

AFFIDAVIT OF SA VOROTNIKOVA - 23
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  was heading to the ferry showed him on the opposite side of the street, where Crystal

2  Seas Kayaking and the other businesses that burned were located.) DWIGHT C.

3  HENLINE said that as he walked by, he saw some people outside of Herb's Tavern. He

4  estimated this was about 9:30 p.m. DWIGHT C. HENLINE said he ate his food and had a

5  cigarette near an ice cream shop where he could watch for the ferry to arrive. DWIGHT

6  C. HENLINE said he did not walk behind any buildings or go anywhere else because he

7  was trying to catch the ferry.

### *Search of Residence Associated with DWIGHT C. HENLINE and Recovery of the Samsung Galaxy Cellular Phone*

10      34.     On April 14, 2022, Detective Peter obtained a real-time location warrant for

11  the cell phone with phone number (360) 544-2519. Location data obtained on April 14,

12  2022, showed cellular phone locations between Langley and Freeland, Washington, on

13  Whidbey Island. At approximately 4:30 a.m. on April 15, 2022, the data showed no

14  location, indicating the phone was off or in an area with no service. On April 15, 2022, at

15  approximately 1:13 p.m., agents began to receive location data again in 15-minute

16  intervals (sometimes called pings), as is common. The location data varied in precision

17  and did not pinpoint an exact location. However, DWIGHT C. HENLINE's

18  grandparents' address was in the area of the pings on the afternoon of April 15, 2022,

19  with a ping at 3:14 p.m. centered less than 200 feet from DWIGHT C. HENLINE's last

20  known address.

21      35.     On April 15, 2022, at approximately 5:34 p.m., SJCSO, ATF, the Island

22  County Sheriff's Office (ICSO), and Langley Police served a San Juan County Superior

23  Court search warrant on the residence in Langley, Washington, associated with DWIGHT

24  C. HENLINE and his grandparents. The occupants of the residence, William and Susan

25  Harrop, were identified as DWIGHT C. HENLINE's grandparents. W. Harrop confirmed

26  that DWIGHT C. HENLINE came to the home approximately two-and-a-half days prior

27  and had been staying exclusively in a spare bedroom in the southeast corner of the

AFFIDAVIT OF SA VOROTNIKOVA - 24
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  residence. W. Harrop advised HENLINE left the residence approximately thirty minutes

2  prior to the investigators' arrival.

3      36.    During the execution of the search warrant, agents found the following

4  items in the room that W. Harrop had identified as the one used by DWIGHT C.

5  HENLINE: an 8-ounce yellow Ronsonol lighter fuel container, consistent with the one

6  that DWIGHT C. HENLINE purchased from the Little Store right before the fire began,

7  that was mostly empty; several BIC lighters; clothing consistent with what was worn by

8  DWIGHT C. HENLINE in the various surveillance videos collected during the

9  investigation; and a black suitcase also consistent with what was seen in the surveillance

10  footage. Investigators also found a black cellular phone that they determined was

11  DWIGHT C. HENLINE's and seized it pursuant to the search warrant. (Note: W. Harrop

12  confirmed the cellular phone belonged to DWIGHT C. HENLINE.) The phone was a

13  black cellular phone, Galaxy A51 model, manufactured by Samsung, IMEI:

14  354030116084186, in a black case.

15      37.    Following the execution of the residence search warrant, agents obtained a

16  state arrest warrant. Langley Police Department officers ultimately located and arrested

17  DWIGHT C. HENLINE in Langley on April 16, 2022.

18          ***DWIGHT C. HENLINE's Possession of Galaxy Samsung Cell Phone***

19      38.    On May 9, 2022, ATF SA/Digital Media Collection Specialist Lexie

20  Widmer examined the Samsung Galaxy cell phone**,** an Android smartphone, pursuant to a

21  Federal Search Warrant MJ22-203, which included the extraction of the device data. The

22  forensic examination of the Samsung Galaxy showed it was associated with the Google

23  account: dwighthenline44@gmail.com, when I examined the data from the extraction, I

24  also saw that in addition to dwighthenline44@gmail.com, the Samsung Galaxy cell

25  phone was affiliated with Google accounts or usernames, dwighthenline@gmail.com,

26  dwighthenline1216, and 4Dogwhight. I am also aware from training and experience that

27  some Google applications can be used without fully logging into an account and thus a

28  search of a specific Google account may not yield all information associated with a

AFFIDAVIT OF SA VOROTNIKOVA - 25
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

particular device.  Further, based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offense under investigation.  Thus, stored communications and files connected to a Target Account may provide direct evidence of the offenses under investigation.  A preservation letter for the Target Account was sent on June 10, 2022.

39.    Account activity may provide relevant location history and location reporting providing evidence of DWIGHT C. HENLINE's location before, during, and following the commission of the arson.  Such location history may result in additional witnesses to his conduct before, during, and in the days following the arson.

40.    Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

41.    The extracted data from the Samsung Galaxy cell phone showed, amongst others, photos of DWIGHT C. HENLINE taken on April 4, 2022, and a video of DWIGHT C. HENLINE taken on April 7, 2022. The Samsung Galaxy cell phone also used phone number (360) 544-2519 with cell phone provider Verizon. As noted earlier in this affidavit, DWIGHT C. HENLINE provided law enforcement with his phone number: (360) 544-2519 on February 22, 2022. Also, J. Harrop, DWIGHT C. HENLINE's mother, confirmed (360) 544-2519 was the current cell phone number for him during her contact with law enforcement on April 13, 2022, and that he had called her on the evening of April 6, 2022. The extracted data showed incoming and outgoing call records to and from "Mom."

//

//

AFFIDAVIT OF SA VOROTNIKOVA - 26
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*Lighter Fuel*

42.     Investigators purchased Ronsonol lighter fuel from the Little Store for $4.87. They compared the Ronsonol lighter fuel container that they purchased to the Ronsonol lighter fuel container they recovered during the search warrant; the two containers appeared to be identical. During the examination of the bottle recovered from DWIGHT C. HENLINE's room, a set of printed characters were observed on the bottle: "102819621UV!" (***Figure 13***). During the examination of the bottle purchased from The Little Store by the investigators, the same set of printed characters ("102819621UV!") were observed on the bottom.



*Figure 13*

43.     The Ronsonol lighter fuel bottle indicated that when new it contained 237 mL of product. Investigators measured the contents of the bottle recovered from DWIGHT C. HENLINE's room during the search warrant. Approximately 30 mL remained in it (***Figure 14***).

AFFIDAVIT OF SA VOROTNIKOVA - 27
USAO# 2022R00471

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970



*Figure 14*

44.     Ronsonol lighter fuel is commonly used to fill refillable lighters. It is marked as being "extremely flammable." During the executions of the search warrant of the residence and DWIGHT C. HENLINE's minivan, no refillable lighters were recovered. All the lighters recovered from the vehicle and the residence were of a disposable type.

***Witness Interviews***

45.     SA Heller interviewed an ex-roommate of DWIGHT C. HENLINE's, E.K. E.K. said he met DWIGHT C. HENLINE through Alcoholics Anonymous in the summer of 2021. He said they lived together from approximately November 2021 through February 2022. E.K. said DWIGHT C. HENLINE dated S.M. for a brief period in the fall of 2021. E.K. said S.M. broke up with DWIGHT C. HENLINE. He said this breakup caused a noticeable change in DWIGHT C. HENLINE's personality. E.K. described DWIGHT C. HENLINE after this breakup as "manic" and said DWIGHT C. HENLINE

AFFIDAVIT OF SA VOROTNIKOVA - 28
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   made statements threatening to hurt people. These statements included DWIGHT C.

2   HENLINE discussing cutting off people's skin. E.K. said DWIGHT C. HENLINE began

3   arming himself with knives, a club, and weapons made from animal bones. E.K. also said

4   that discussions about A.C., a different ex-girlfriend of DWIGHT C. HENLINE's, were

5   triggers that caused DWIGHT C. HENLINE to exhibit aggressive behavior, including

6   swinging his club.

7       46.     SA Heller also interviewed S.M., who said that she had a relationship with

8   DWIGHT C. HENLINE in the fall of 2021 but said she had not considered the two of

9   them to be a couple. She said at some point she made that fact clear to DWIGHT C.

10  HENLINE and ended the relationship. She said from approximately January 2022

11  forward she only saw DWIGHT C. HENLINE at Alcoholics Anonymous meetings. S.M.

12  said that DWIGHT C. HENLINE never made threats directly to her but appeared to be

13  upset with everyone. S.M. reported that she had not seen DWIGHT C. HENLINE

14  recently and did not see him the day before the fire. S.M. reported having received some

15  social media messages from DWIGHT C. HENLINE on approximately April 2, 2022, but

16  ignored them and didn't open them. S.M. reported that she believed DWIGHT C.

17  HENLINE was on Whidbey Island.

18      47.     S.M. reported that on April 6, 2022, (the evening before the fire) she went

19  to Herb's Tavern to play pool. S.M. arrived between 8:30 and 9:00 p.m. and parked on

20  the side of Spring Street, opposite of Herb's Tavern. S.M. reported she went out to her

21  vehicle intending to leave at approximately 10:00 p.m., but discovered that her front

22  passenger side tire was completely flat as she attempted to drive. S.M. re-parked her car

23  directly in front of Herb's Tavern and got a ride out of the area at approximately 10:30

24  p.m. S.M. left her vehicle and did not get it back until after the fire.

25      48.     S.M. reported DWIGHT C. HENLINE would have recognized her vehicle

26  because he had seen her driving it and had ridden in it before. S.M. reported having

27  replaced the damaged tire but she kept the flat tire. SA Heller and a SJCSO detective

28  arranged to meet with S.M. and inspect the tire. Upon inspection, SA Heller and the

1  SJCSO detective observed a cut in the sidewall of the tire that extended all the way

2  through the rubber to the inside of the tire.

3  *Activities Affecting Interstate Commerce*

4  49.   The primary buildings and businesses damaged or destroyed in the fire in

5  Friday Harbor, Washington were:

6  • 40 Spring Street: Crystal Seas Kayaking, San Juan Property Management, and

7  San Juan Excursions

8  • 50 Spring Street: Windemere Real Estate

9  • 70 Spring Street: Crow's Nest Coffee

10  • 80 First Street South: Herb's Tavern

11  50.   Fire investigators determined that the fire started in the decked area

12  attached to 40 Spring Street. Investigators interviewed the owners of that building and the

13  businesses that are based in it.

14  51.   Crystal Seas Kayaking offers sea kayaking trips and bicycle tours in the

15  San Juan Islands. Friday Harbor and San Juan Island generally are tourist destinations,

16  and tourism is a major business in the town and region. The owners of Crystal Sea

17  Kayaking explained that it is common for individuals who reside outside of the state of

18  Washington and even outside of the United States to travel to Friday Harbor and take

19  their biking or kayaking tours. The owners are aware of the states and countries of

20  residence of their guests from having conversations with them, as well as from reviewing

21  addresses the guests listed on waiver forms. Crystal Seas Kayaking maintains a website

22  that it uses for advertising and booking, uses Google advertisements, and offers remote

23  tour bookings via the phone and internet. Crystal Seas Kayaking accepts major credit

24  cards via the credit card processing company Heartland. From prior experience serving

25  court orders and from open-source research, I am aware that Google is headquartered in

26  California and Heartland is headquartered in Oklahoma.

27  52.   San Juan Excursions offers wildlife and whale watching tours. Like Crystal

28  Seas Kayaking, the owners are aware that guests travel from out of the state and out of

AFFIDAVIT OF SA VOROTNIKOVA - 30
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  the country. Again, this knowledge comes from conversations with the guests and from

2  reviewing addresses the guests listed on waiver forms. San Juan Excursions also offers

3  remote tour bookings via phone and internet and accepts credit card payments via credit

4  card processor Heartland.

5          53.     San Juan Property Management manages vacation rentals on San Juan

6  Island and Orcas Island. As with the other two above businesses, the owners are aware

7  that it is common for individuals who reside outside of the State of Washington,

8  including outside of the United States, to travel the San Juan Islands and stay in managed

9  vacation rentals. This knowledge comes from conversations with guests as well as from

10  reviewing booking information. San Juan Property Management books rental units

11  through its own website, through VRBO, and through AirBnB. Credit cards are accepted

12  through either VRBO, Air BnB, or the credit card processor Vacation Rent Payment.

13  Open-source research indicates that VRBO is headquartered in Texas, and Airbnb and

14  Vacation Rent Payment are headquartered in California.

15          54.     Also, Windermere Real Estate manages vacation rentals, in addition to

16  selling real property. Crow's Nest Coffee and Herb's Tavern are restaurants.

17                  **BACKGROUND OF GOOGLE SERVICES**

18          55.     In my training and experience, I have learned that Google provides a

19  variety of online services to the public, such as Gmail, Google Voice, various messaging

20  platforms, online wallet services, mapping/navigation services, and more. Google also

21  owns the Android Operating System software found on upwards of 80% of cellular

22  phones throughout the world. Because of this, Google maintains a plethora of records

23  associated with the various services and software they provide. When registering for

24  many of the various types of Google accounts, Google asks subscribers to provide basic

25  personal information, such as the subscriber's full name, physical address, telephone

26  numbers, alternative email addresses, and, for paying subscribers, means and source of

27  payment (including any credit or bank account number). Additionally, during the user

28  registration process Google may also record certain identification numbers for the device

AFFIDAVIT OF SA VOROTNIKOVA - 31
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

through which the user accessed Google, such as serial numbers, International Mobile Equipment Identity ("IMEI") numbers, Mobile Equipment Identifier ("MEID") numbers, Electronic Serial Number ("ESN"), etc.

56.     Through many of the services offered by Google, a subscriber can store files, address books, contact or buddy lists, calendar data, and pictures on servers maintained and/or owned by Google. Google's email service, called "Gmail," allows users to send and receive electronic messages which are routed through servers maintained and/or owned by Google. The numerous messaging and Voice over Internet Protocol ("VOIP") platforms offered by Google also allow users to communicate with one another by routing conversations through servers maintained and/or owned by Google. These various types of content are often useful in investigations to determine who is using a specific account, who they are communicating with, and the subject of the users' conversations.

57.     Aside from content information, Google also records and maintains records of certain types of metadata, such as IP addresses utilized by a user to access Google and geo-location information derived from GPS/cellular signal/Wi-Fi signal/Bluetooth connections of the device through which the user accessed Google. Furthermore, Google keeps records that can reveal Google accounts associated to one another by virtue of the electronic device through which the accounts were accessed, such as the same computer or mobile phone. This includes accounts that are linked by "cookies," which are small pieces of text sent to the user's internet browser when visiting websites. These records, although not personally generated by the user in the way content is created, are a byproduct of the how the services are facilitated and offered by Google.

58.     In my training and experience, the types of information maintained by Google may constitute evidence and instrumentalities of the crime under investigation, and will enable investigators to determine if HENLINE was involved in an Arson in violation of Title 18, United States Code, Section 844(i).  Among other things, the requested information may be relevant in confirming the identities of the users of the

AFFIDAVIT OF SA VOROTNIKOVA - 32
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Samsung Galaxy cell phone and Target Account; may provide precise location information to determine if the user of the Samsung Galaxy cell phone was at the alleged crime scene; may provide communications made by the user of the Samsung Galaxy cell phone around the time of the alleged offense.

59. The date range for the requested warrant is from April 1, 2022, to April 15, 2022, which is the day the Samsung Galaxy cell phone was seized by law enforcement.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

60. I anticipate executing this warrant under the Electronic Communications Privacy Act (ECPA), in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Provider to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

61. Pursuant to Title 18, United States Code, Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Provider, and its agents and employees, to assist agents in the execution of this warrant. Once issued, the search warrant will be presented to Provider with direction that it identify the account described in Attachment A to this affidavit, as well as other subscriber and log records associated with the accounts, as set forth in Section I of Attachment B to this affidavit.

62. The search warrant will direct Provider to create an exact copy of the specified server, account and records.

63. I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure.

64. Analyzing the data contained in the copy of the specified account may require special technical skills, equipment, and software. It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of

AFFIDAVIT OF SA VOROTNIKOVA - 33
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  which must then be reviewed in context by the examiner to determine whether the data is
2  within the scope of the warrant. Merely finding a relevant "hit" does not end the review
3  process. Keywords used originally need to be modified continuously, based on interim
4  results. Certain file formats, moreover, do not lend themselves to keyword searches, as
5  keywords, search text, and many common e-mail, database and spreadsheet applications
6  do not store data as searchable text. The data may be saved, instead, in proprietary non-
7  text format. And, as the volume of storage allotted by service providers increases, the
8  time it takes to properly analyze recovered data increases, as well. Consistent with the
9  foregoing, searching the recovered data for the information subject to seizure pursuant to
10  this warrant may require a range of data analysis techniques and may take weeks or even
11  months. All forensic analysis of the data will employ only those search protocols and
12  methodologies reasonably designed to identify and seize the items identified in Section II
13  of Attachment B to the warrant.

## **CONCLUSION**

15  65.   Based on the forgoing, I request that the Court issue the proposed search
16  warrant. This Court has jurisdiction to issue the requested warrant because it is "a court
17  of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a),
18  (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . .
19  that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). ).
20  Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the
21  warrant on the Provider. Because the warrant will be served on the Provider, who will
22  then compile the requested records and data, reasonable cause exists to permit the
23  execution of the requested warrant at any time in the day or night. Accordingly, by this
24  Affidavit and Warrant, I seek authority for the government to search all of the items
25  specified in Section I, Attachment B (attached hereto and incorporated by reference
26  herein) to the Warrant, and specifically to seize all of the data, documents and records
27  that are identified in Section II to that same Attachment.

28

AFFIDAVIT OF SA VOROTNIKOVA - 34
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1     66.     The affidavit and application are being presented by reliable electronic

2 means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

3

4                                          NATALIA          Digitally signed by NATALIA
                                                           VOROTNIKOVA
                                           VOROTNIKOVA      Date: 2022.12.22 12:13:15 -08'00'

5                                          _____

6                                          Natalia Vorotnikova, Special Agent
                                           Special Agent

7                                          Bureau of Alcohol, Tobacco, Firearms
                                           and Explosives

8

9

10

11        The above-named agent provided a sworn statement to the truth of the foregoing

12 affidavit by telephone on this 23rd day of December 2022.

13

14

15                                         _____

16                                         S. Kate Vaughan

17                                         United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SA VOROTNIKOVA - 35
USAO# 2022R00471

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

**Account to be Searched**

This warrant applies to information related to the Google accounts associated with the following identification numbers and phone numbers, all of which is stored at premises controlled by Google LLC ("Google" or "Provider"), an electronic communications and online service provider headquartered at 600 Amphitheatre Parkway, Mountain View, California:

a.     Accounts associated with a cellular telephone bearing International Mobile Equipment Identity ("IMEI") number 354030116084186 and/or telephone number (360) 544-2519 (Target Account), that were not included in the prior request made to Google related specifically to the Google account dwighthenline44@gmail.com and Google Account ID 325124238697.  The prior request was made pursuant to US District Court for the Western District of Washington Search and Seizure Warrant MJ22-267 and was assigned Google reference number 20046121.

*The account is referred to as the "Account" in Attachment B.

Attachment A-1
USAO# 2020R00440

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Items to be Seized**

**I.  Section I - Information to be disclosed by Google, for search:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, including any e-mails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose the following information to the government for each account or identifier listed in Attachment A for the time period of April 1, 2022, to April 15, 2022:

1. Subscriber/registration information to include name, emails, phone numbers, addresses, account creation dates, account status, registration IP address, means and source of payment (including any credit or bank account numbers);

2. Device identifiers (IMEI/MEID, serial number, SIM operator, cell operator, and model number, etc.), account identifiers, Android ID, Push Tokens and/or Device Tokens, etc. associated with the Account(s);

3. All IP Address logs for all services utilized by the Account(s), to include records of session times and durations, login/logout/intra-communication IP addresses associated with session times and date, methods of connecting, and log files;

4. Location history for all identified/associated Account(s), to include deleted information, derived from Global Positioning System (GPS) data, cell site/cell tower triangulation precision measurement information such as timing advance or per call measurement data, Wi-Fi location information, and Bluetooth location information. Such data shall include the GPS coordinates, the dates and times of all location recordings, origin of how the location recordings were obtained, and estimated radius;

5. All Gmail address(es) associated with the identified Account(s) including any secondary or backup email addresses associated with the Accounts;

6. The contents of all text messages, voicemails, recorded calls, emails chat messages, and saved drafts associated with the Account(s), including stored/preserved copies and contents maintained on a cloud service, the source and destination addresses associated with each communication, the date and time at which each communication was sent, and the size/length/duration of each communication;

Attachment B-1
USAO# 2020R00440

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.  All photos and videos stored in the Account(s);

8.  Passwords or other protective devices in place and associated with the Account(s), which would permit access to the content stored therein;

9.  Web search history, including, but not limited to, mobile and desktop browser searches;

10. Downloaded, installed, and/or purchased apps along with activity/registration information;

11. Voice and/or audio activity recordings/captures;

12. Google Map locations which are saved and/or frequent locations, favorite and/or starred locations including, but not limited to, searches conducted using the Google Map and/or Maze services;

13. Google Voice incoming or outgoing phone calls, voicemails, including voicemail content and any and all incoming or outgoing text message history, together with the content thereof to include SMS, MMS, or any other form of text message communication, and any call forwarding numbers and account backup telephone numbers;

14. Communication including, but not limited to, audio, video, text message and/or chat delivered through the Google, Inc. service known as Google Hangouts;

15. Posts, status updates, photographs and/or videos that are contained and/or were uploaded in the services known as Google Photos, Picasa web albums, Google +, or any other service designed to store video, photographs, and/or data, including the metadata for each file;

16. Electronic files, folders, media, and/or data uploaded and/or contained on the service known as Google Drive;

17. Entries created, deleted, or modified using the service known as Google Keep;

18. Contacts stored using the service known as Google Contacts, including any contacts stored in the service known as Gmail, and any other service where contact lists are maintained;

19. Google Play Store transactions;

20. Additional accounts linked by cookies.

Attachment B-2
USAO# 2020R00440

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Provider is hereby ordered to disclose the above information to the government within <u>14 DAYS</u> of receipt of service of this warrant.**

**II.  Section II - Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of Title 18, United States Code, Section 884(i) (Arson), those violations occurring between at least April 1, 2022, through April 15, 2022, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a)  Evidence of any attempt or plan to engage in arson or to otherwise cause damage to property located in Friday Harbor, San Juan County;

(b)  Evidence of any attempt or plan to target particular victims or particular businesses or locations to include underlying motivation(s) to attempt to plan to target particular victims or particular businesses or locations;

(c)  Evidence of the identity of the user(s) of the account;

(d)  Evidence of the location or whereabouts, both current and historical, of the user(s) of the account;

(e)  Evidence indicating the account user's state of mind as it relates to the crime under investigation;

(f)  Evidence of the account user's ownership, control, or use of particular email, social media, or online accounts;

(g)  All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account;

Attachment B-3
USAO# 2020R00440

(h)     Any address lists or buddy/contact lists associated with the specified account, and other information regarding potential co-conspirators, criminal associates, or suspected victims or targets (i.e., attempted victims) of the arson;

(i)     All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service) including any credit card or bank account number;

(j)     Any and all other log records, including IP address captures, associated with the specified account;

(k)     Any records of communications between Provider, and any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account.  This to include records of contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications;

(l)     Any complaints and records relating to any adverse action taken on the account, including an account suspension for violations of terms of service, whether temporary or permanent, the details surrounding that adverse action, and any communications related thereto.

Attachment B-4
USAO# 2020R00440

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the ATF may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

Attachment B-5
USAO# 2020R00440

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by _____ ("Provider"), and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Provider.  The attached records consist of

_____

**[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Provider**,** and they were made by Provider as a regular practice; and

b.      such records were generated by Provider**'s** electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Provider in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by Provider, and at all times pertinent to the records certified here the process and system functioned properly and normally.

Certificate of Authencity-1
USAO# 2020R00440

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

   I further state that this certification is intended to satisfy Rules 902(11) and
902(13) of the Federal Rules of Evidence.

3

4

5

_____       _____

6

Date                                   Signature

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Certificate of Authencity-2
USAO# 2020R00440

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5200
SEATTLE, WASHINGTON 98101
(206) 553-7970